[No. 28914. Department Two. April 6, 1943.]

JULIA THOMPSON, *Appellant,* v. J. F. HUSTON et al., *Respondents.*[1]

[1]Reported in 135 P. (2d) 834.

458

*Velikanje & Velikanje,* for appellant.
*Edward A. Davis,* for respondent.

BEALS, J.—Plaintiff, Julia Thompson, instituted this action against J. F. Huston and wife, for the purpose of recovering possession of a lot in the city of Pasco, plaintiff also praying that her title to the property be quieted as against defendants.

It appears that, during the month of April, 1937, plaintiff, by a written contract, agreed to sell to defendants, and defendants agreed to purchase from plaintiff, the lot in question for the sum of nine hun-

dred dollars, of which defendants paid in cash one hundred fifty dollars, agreeing to pay the balance at the rate of fifteen dollars per month, including interest on deferred balances at the rate of six per cent per annum. Defendants also agreed to pay all taxes thereafter accruing against the property. By the terms of the contract, plaintiff agreed to deliver to defendants an abstract showing good title in her, the contract providing that, if the title disclosed by the abstract appeared to be defective, defendants would call plaintiff's attention to the defects, and that plaintiff should have a reasonable time within which to perfect the title. It was agreed that, if defendants should default in making any stipulated payment, plaintiff might, at her election, terminate the contract, take possession of the premises, and retain the sums paid as liquidated damages.

Plaintiff delivered to defendants the abstract of title called for by the contract, but defendants informed plaintiff that they did not care to have the abstract examined by an attorney.

According to the plat of the block containing the lot in question, the property fronted B street on the north. This street was partially surfaced, but generally speaking was unimproved, the margins of the street being not clearly shown upon the ground. During the spring of 1940, the city surveyed the street, located its boundaries, and proceeded to grade the street. Upon the south line being established, it was discovered that approximately eight or nine feet of the dwelling and the garage situated on the property were in the street, and that some trees which had been supposed to stand on the lot were also in the street. The discovery of this state of affairs resulted in some controversy between the parties, and, no agreement having been reached between them, defendants ceased making the monthly payments called for by the contract, whereupon plain-

tiff served upon defendants written notice to the effect that she terminated the contract, declaring the same forfeited because of nonpayment of the installments due, plaintiff at approximately the same time instituting this action.

In their answer, defendants pleaded that, June 7, 1940, they had served upon plaintiff a written notice of their election to rescind the contract, together with their demand for the return to defendants of the sum of $705, which they had paid on account of the purchase price of the property. They also alleged that they had offered to convey to plaintiff all their interest in the property. It does not appear, however, that defendants ever tendered to plaintiff any deed, and they remained in possession, and continued to occupy the premises up to the date of trial.

The issues having been made up, the action was tried to the court, and, February 11, 1942, a memorandum opinion was filed, stating that a decree in favor of defendants would be entered, granting them a rescission of the contract, and awarding them judgment against plaintiff for $739.64, less the sum of ten dollars a month from the date of the institution of the action, which the court found to be a reasonable compensation to be paid by defendants for the use and occupation of the property.

The entry of judgment was suspended by the making of a motion for a new trial by plaintiff, who, in the alternative, asked for judgment in her favor notwithstanding the decision of the court, and, June 22, 1942, the court signed a decree prepared by plaintiff's counsel, but presented in their absence. Prior to signing the decree, there was interlined therein the following language: "Said judgment shall be a lien on above described real estate from date of such rescission." From this decree, plaintiff has appealed.

Error is assigned upon the granting of respondents' prayer for a rescission of the contract, and upon the award of judgment in respondents' favor for the return of the money which they had paid upon the contract. Error is also assigned upon the amount charged against respondents for use and occupation of the premises, appellant contending that the amount allowed was too small. Appellant also assigns error upon the portion of the decree interlined therein, as above stated; upon the court's refusal to enter a decree in appellant's favor; and upon denying her motion for new trial.

The trial court made no formal findings of fact, but signed a memorandum opinion containing findings, as well as the court's opinion on the law applicable to the facts as found. In this memorandum, the court found definitely that appellant visited the property with respondents prior to the signing of the contract, pointing out the lot lines, with particular reference to the line bordering on B street. While the evidence on this phase of the case was in dispute, we accept the view of the trial court upon this question of fact.

The evidence clearly shows, however, that, in pointing out what she believed to be the lot lines, appellant was acting in entire good faith, believing that the true lines were as she indicated, and that the house and garage were situated entirely upon the property which she owned. Upon the record, respondents were justified in relying upon appellant's statements in making the representations which the court found she made. Untrue statements amount to constructive fraud, even though made in entire good faith. *Starwich v. Ernst,* 100 Wash. 198, 170 Pac. 584; *McDaniel v. Crabtree,* 143 Wash. 168, 254 Pac. 1091; *Stanley v. Parsons,* 156 Wash. 217, 286 Pac. 654; *Lou v. Bethany Lutheran Church,* 168 Wash. 595, 13 P. (2d) 20.

This court has held that an executory contract

may be rescinded if the vendee was induced to enter into the contract by fraudulent misrepresentations on the part of the vendor. *Henderson v. Miller*, 119 Wash. 362, 205 Pac. 1; *Empey v. Northwestern & Pacific Hypotheekbank*, 129 Wash. 392, 225 Pac. 226; *Graham v. Shively*, 173 Wash. 475, 23 P. (2d) 881; *Algee v. Hillman Inv. Co.*, 12 Wn. (2d) 672, 123 P. (2d) 332.

Respondents, then, had the right to rescind the contract, unless they are barred by the fact that they had failed to pay certain taxes due against the property, which under the contract they were obligated to pay. It appears that respondents paid all installments of the purchase price due prior to notice of rescission. Appellant invokes the general rule that a vendee may not rescind if, at the time he gives notice of rescission, he was in default according to the terms of the contract. In support of her argument, appellant cites *Reddish v. Smith*, 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781; *Palmer v. Washington Securities Inv. Co.*, 43 Wash. 451, 86 Pac. 640; *Hansen v. Ahrens*, 171 Wash. 500, 18 P. (2d) 43; *Eberhart v. Lind*, 173 Wash. 316, 23 P. (2d) 17.

The rule invoked by appellant does not apply when rescission is sought upon the ground of fraud in the procurement of the contract. In the case of *Downs v. Smith*, 169 Wash. 203, 13 P. (2d) 440, an action to rescind a real estate contract because of alleged fraudulent misrepresentations, we said:

"It is urged, however, that respondents, having been in default in their payments, were as a matter of law not entitled to maintain this action. It is true that one who seeks to enforce the terms of a contract against another or to recover damages for the breach of a contract by another must show that there has been no breach on his own part. This is on the theory that one who has himself breached a contract cannot thereafter enforce the contract against the other party. *Reddish v. Smith*, 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781, and many cases following. So far as we are aware,

that rule has never been applied to an action to rescind a contract on the ground of fraud. Fraud vitiates everything, and a contract obtained by fraud is, the fraud being established, a nullity. *Producers' Grocery Co. v. Blackwell Motor Co.*, 123 Wash. 144, 212 Pac. 154."

In 66 C. J. 817, § 464, the rule is stated as follows:

"But a purchaser in default may rescind where he justifies his own default by the vendor's prior default, or where his default was waived by the vendor, or where he seeks rescission on the ground of fraud or misrepresentation, or where his default is caused by the vendor's conspiracy to hinder and delay him in making payment, and a purchaser is not regarded in equity as being in default to a vendor who has converted his funds."

█ Appellant also argues that, because respondents remained in possession of the property for some time after discovering the true location of the boundary line, paying some taxes and two installments on the contract, they are estopped to seek rescission. The record shows that, after discovering the location of the lot line, respondents acted promptly in advising appellant of the situation. They are not estopped by the fact that they remained in possession, as shown by the record. *Empey v. Northwestern & Pacific Hypotheekbank, supra; Algee v. Hillman Inv. Co., supra.*

The court's conclusion that, upon the facts disclosed by the record, respondents were entitled to rescind the contract, was correct.

█ Appellant next contends that she is entitled to an offset against the amount paid by respondents on the contract, together with interest, for the reasonable value of the use and occupation of the premises during the entire period that respondents occupied the same. The trial court awarded respondents an amount equal to the sum total of the payments respondents had made

under the contract, without interest, and offset against this award a sum equal to ten dollars per month from the date of the commencement of the action, for the use and occupancy of the property.

In disallowing interest on the payments made, the trial court offset against that item the value of the use and occupancy of the premises, up to the date of the commencement of the action.

In so limiting the effect of the offset, the trial court followed the rule laid down in the case of *Empey v. Northwestern & Pacific Hypotheekbank, supra.* In the case cited, it appeared that the defendant had contracted to sell to plaintiffs a tract of land comprising all of two platted lots, half an adjoining lot, and an abutting tract described by metes and bounds. Some time after the execution of the contract, it was discovered that the dwelling which the parties had supposed was situated upon the property described, stood in part upon an adjoining lot not covered by the contract or owned by the defendant. The trial court decreed rescission of the contract and return of the money paid on account of the purchase price, with interest, offsetting against the total amount the reasonable rental value of the property. On appeal, this court affirmed the decree of rescission, but modified the decree by limiting the effect of the offset for rent to the interest upon the payments made by vendees under the contract which, in the absence of any offset, vendors would have owed to vendees. After discussing several decisions of this court, we said:

"It is at once apparent, we think, that these cases do not lay down the broad rule contended for; that they establish rather two separate and distinct rules, namely: (1) that, where the vendor has no title to the property, the vendee may recover the sums paid towards the purchase price with interest, together with such reasonable and necessary expenses the vendee has incurred for

improvements which enhance the value of the property; and (2) that, where the vendor has not a marketable title, or has valid title only to some part of the property, he may offset the value of the use of the premises, if occupied by the purchaser, against interest on the payments made towards the purchase price.

"The latter of the rules, in so far as it determines the amount of the offset, is no doubt somewhat arbitrary. But it can be justified because of the necessity of the case. Any more particular inquiry would involve relative proportions and relative values, leading to no very certain results after the inquiry is completed. The adopted rule will seldom work injury to the vendee, and it is clear that it will not do so in the present instance."

As we said in the case of *Johnson v. Stalcup*, 176 Wash. 153, 28 P. (2d) 279, the rule that the offset of the use of the property may be allowed only against the interest, takes into consideration the thought that the occupant of the property may be liable to the owner of the land erroneously included in the contract and occupied by the vendee, either for rent or for damages upon some other theory.

In the case at bar, the dwelling and garage occupied by respondents were located in part upon a public street, and not upon private property. Manifestly, no claim can be urged by the city of Pasco against respondents for use of a portion of an unimproved street, the use having been unintentional, permissive, and, under the circumstances shown, not amounting to a nuisance in fact. Under these circumstances, the reason for the rule relied upon by respondents fails, and the authorities relied on by respondents are not in point. The trial court erred in refusing to allow appellant an offset for the reasonable value of the use of the property during the entire period it was occupied by respondents. *Johnson v. Stalcup, supra.*

Concerning the value of the use of the property,

the court fixed the same at ten dollars per month. Appellant contends that under the evidence the court erred in computing the amount of the offset to be allowed appellant on any basis less than fifteen dollars per month. The record contains no evidence that the value of the use of the property was less than fifteen dollars per month. Respondents suggest that the trial court fixed the amount at ten dollars per month, for the reason that about one-third of the house and garage were located on the street. We find in the record no intimation that the trial court had any such idea in mind, but, in any event, the house and garage belonged to appellant, could without much difficulty have been moved onto the property which appellant owned, and, in so far as respondents were concerned, they had the full use thereof, without possible liability to any third person. The trial court erred in fixing the value of the use and occupation of the premises at less than fifteen dollars per month.

Finally, as above stated, when the decree was presented to the trial court for signature, appellant was not represented, due to the excusable absence of her counsel, and respondents' counsel, prior to the signing of the decree, interlined therein, after the award of judgment against appellant and the allowance of the offset thereto, the following: "Said judgment shall be a lien on above described real estate from the date of such rescission."

We find no legal basis for the portion of the decree above quoted. The property in question had not been attached at respondents' instance, nor did they ever acquire any right which would authorize the granting to them of the specific lien provided for in the judgment. The matter of judgment liens is covered by Rem. Rev. Stat., §§ 445, 445-1 [P. C. §§ 8110-11, 8110-12]. The portion of the decree referred to is erroneous.

The decree appealed from is reversed. Respondents will be allowed judgment for all sums which they have paid under the contract, together with interest thereon from the respective dates of payment, at six per cent per annum. By way of an offset to this amount, appellant will be allowed an amount equal to fifteen dollars per month for the time respondents have been occupying the premises. The decree will also be modified by striking therefrom the provision above quoted, making the award in favor of respondents a lien upon this specific property. The cause will be remanded to the trial court, with directions to enter a new decree in conformity with this opinion. Appellant will recover her costs in this court.

SIMPSON, C. J., BLAKE, ROBINSON, and GRADY, JJ., concur.

